UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

ISAAC ISIAH BARNES,

        Defendant.
_____/

Case No. 18-CR-20675
Honorable Thomas L. Ludington

**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE WITH PREJUDICE**

On March 6, 2019, Defendant Isaac Isiah Barnes pled guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). ECF No. 37. He was sentenced to 36 months imprisonment. ECF No. 94. Defendant is currently housed at Federal Correctional Institution, Oxford ("FCI Oxford") in Wisconsin. On July 23, 2020, Defendant filed a *pro se* motion for modification of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 27. Plaintiff, the United States of America (the "Government"), responded on August 10, 2020. ECF No. 28. Under Local Rule 7.1, Defendant had seven days to file a reply brief. E.D. Mich. L.R. 7.1(e)(2)(C). As of September 23, 2020, Defendant has not filed a reply brief. For the reasons stated below, Defendant's motion will be denied with prejudice.

**I.**

Defendant seeks a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), which provides:

> The court may not modify a term of imprisonment once it has been imposed except…upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the

> defendant's facility, whichever is earlier, may reduce the term of imprisonment…
> after considering the factors set forth in section 3553(a) to the extent that they are
> applicable, if it finds that…extraordinary and compelling reasons warrant such a
> reduction…and that such a reduction is consistent with applicable policy statements
> issued by the Sentencing Commission

18 U.S.C. § 3582(c)(1)(A). To be precise, however, Defendant does not seek a reduction of his sentence to time-served but asks to serve the remainder of his sentence on home confinement. ECF No. 27 at PageID.118. This Court lacks jurisdiction to transfer Defendant to home confinement. "Designation of an inmate's place of confinement, including placement in home confinement [under section 12003(b)(2) of the CARES Act], rests within the absolute discretion of the BOP." *United States v. Buford*, No. 05-80955, 2020 WL 4040705, at *6 (E.D. Mich. July 17, 2020) (internal quotation marks omitted). As a result, "district court[s] [have] no authority to grant relief under section 12003(b)(2)." *Id.* Nevertheless, Defendant clearly seeks a modification of his sentence on the basis of the COVID-19 pandemic and his health condition. Thus, his motion will be construed as a motion for compassionate release.

The statute provides three inquiries that must be addressed in resolving Defendant's motion for compassionate release. First, whether Defendant fully exhausted his administrative remedies with the Bureau of Prisons (the "BOP"). Second, whether a sentence reduction is warranted in consideration of the factors set forth in 18 U.S.C. § 3553. Finally, whether "extraordinary and compelling reasons warrant such a reduction" and whether the reduction is consistent with the applicable Sentencing Commission policy statements. Each inquiry will be addressed in turn.

**A.**

As explained in the statute, before a court may consider an inmate's request for a reduced sentence under 18 U.S.C. § 3582, the inmate must first exhaust his administrative remedies with the BOP or wait 30 days after making such a request. The Sixth Circuit has explained that:

> By creating a compassionate-release option in the First Step Act, Congress gave inmates an option to seek early release on health grounds. The seriousness of COVID-19 and its spread in many prisons make it all the more imperative that the prisons have authority to process these applications fairly and with due regard for the seriousness of each inmate's risk. Free-floating exceptions to the rule, available to anyone willing to go to federal court first, will not help that cause.

*United States v. Alam*, 2020 WL 2845694, at *4 (6th Cir. June 2, 2020). Defendant alleges that on May 7, 2020, he asked the Warden to submit a motion for modification pursuant to 18 U.S.C. § 3582(c)(1)(A) on his behalf. ECF No. 27 at PageID.117. Defendant produces no evidence in support, but the Government states that the BOP denied his claim. ECF No. 28 at PageID.128. The Government has therefore conceded the issue of exhaustion. Accordingly, Defendant has exhausted his administrative remedies with the BOP.

**B.**

The next consideration is whether the sentence reduction is warranted under the factors of 18 U.S.C. § 3553(a). They are as follows:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct;
> >
> > (C) to protect the public from further crimes of the defendant; and
> >
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for--
>
> > (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines…
>
> (5) any pertinent policy statement…

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). Defendant's underlying offense is being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). ECF No. 37. Firearm offenses are serous, particularly when they involve unlawful possession by a felon. Additionally, Defendant only began serving his 36-month sentence in January 2020. His release date is not until August 2022. The seriousness of Defendant's underlying offense weighs against compassionate release. Furthermore, as explained in Section I.C.2. below, Defendant's previous offenses, including his probation and parole violations, demonstrate that he would be a danger to others or the community if released. Accordingly, under the § 3553 factors, Defendant is not entitled to a sentence reduction.

## C.

The next inquiries to be resolved are whether "extraordinary and compelling reasons warrant such a reduction" and whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Sentencing Commission promulgates the United State Sentencing Guidelines ("U.S.S.G."). The applicable policy statement is found in U.S.S.G. § 1B1.13, which provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment…if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that--
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction;…
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. Defendant fails to show an extraordinary and compelling reason for release and that he would not pose a danger to others or the community if released.

**1.**

The commentary of the policy statement provides additional guidance about which circumstances qualify as extraordinary and compelling reasons. It provides:

> [E]xtraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant.--
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is--
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant.--The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.--
>
> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

      (ii)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.--As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13. Defendant is a 31-year-old male. Shortly after the COVID-19 pandemic began, Defendant began experiencing seizures. ECF No. 27 at PageID.118. Doctors at the University of Wisconsin-Madison Medical Center diagnosed him with Psychogenic Non-Epileptic Seizures ("PNES"). *Id.* According to the University of Wisconsin-Madison, "PNES, unlike epileptic seizures, are not caused by a brain disease. Instead, the events are stress-induced." Psychogenic Non-Epileptic Seizures (PNES), https://www.uwhealth.org/healthfacts/neuro/8015.pdf [https://perma.cc/P7J7-6HKA] (last visited Sept. 23, 2020). "Medicines often used for epilepsy do not control PNES." *Id.* Instead, "[s]tudies show that therapy, lowering stress, and personal support reduce or stop the seizure-like symptoms." *Id.* Defendant does not identify any other medical condition but asserts that FCI Oxford is "not adequately equipped to provide the recommended professional help." ECF No. 27 at PageID.119. He provides several examples of the facility's "punitive" medical care, including placing him on "suicide watch" and depriving him of privileges like contacting his family. *Id.* Defendant claims that FCI Oxford's mismanagement of his condition is exacerbating his symptoms, leaving him in a "state of constant stress." *Id.*

Subsection (A) requires that a defendant suffer from a "terminal illness" or a "serious physical or medical condition" that "substantially diminishes" his ability to provide self-care within the custodial environment. U.S.S.G. § 1B1.13. Without minimizing Defendant's allegations, they are more relevant to an Eighth Amendment deliberate indifference claim than a

motion for compassionate release.[1] The question here is not whether the BOP is furnishing constitutionally adequate care but whether Defendant has an extraordinary and compelling reason for release. There is no indication that PNES is a "terminal illness" or "serious physical or medical condition," or even a risk factor for COVID-19.[2] Furthermore, the "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)." Accordingly, Defendant's PNES, even in combination with the risk of COVID-19, is not an extraordinary and compelling reason for release under subsection (A).

Subsections (B) and (C) are also inapplicable. Regarding subsection (B), Defendant is only 31 years old. With respect to subsection (C), Defendant is not alleging the death or incapacitation of the caretaker of his minor children, nor is he alleging the incapacitation of a spouse. *See* U.S.S.G. § 1B1.13. Accordingly, Defendant has not stated an extraordinary or compelling reason for release.

**2.**

The policy statement further directs the Court to consider the factors in 18 U.S.C. § 3142 in determining whether the defendant would be a danger to others or the community. The § 3142 factors are:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

---

[1] To the extent that Defendant believes his constitutional right are being violated, he should bring appropriate action.
[2] Defendant acknowledges that PNES is primarily treated without medication. ECF No. 27 at PageID.119. Even so, he mentions that the "therapy that was recommended" may make him "unusually susceptible" to COVID-19. *Id.* at PageID.120. Defendant does not elaborate on this remark, and he does not claim to be taking any medication. Accordingly, his comment regarding susceptibility must be mistaken.

>(2) the weight of the evidence against the person;
>
>(3) the history and characteristics of the person, including--
>
>>(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>>(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
>(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release…

18 U.S.C. § 3142(g). These factors support the conclusion that Defendant would be a danger to others or the community if released. Despite his relatively young age, Defendant has a lengthy criminal history. Before his conviction for attempted delivery of cocaine in 2012 when he was 22, Defendant had already received nearly a dozen misdemeanor convictions since turning 17. For attempting to deliver cocaine, Defendant was sentenced to one year in custody and five years of probation. He violated his probation in 2013 but was sent to a Sentencing Alternative Incarceration program. Defendant violated his probation again a few months later and was returned to custody. While in custody, he was convicted in 2014 of being a prisoner in possession of a weapon. He was paroled in 2017. A few months later, he was arrested for and later convicted of tampering with an electronic monitoring device after he cut off his tether. His parole was reinstated in February 2018. He was still on parole when, in August 2018, he committed the underlying offense: being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

"The concern about safety is to be given a broader construction than the mere danger of physical violence. Safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community." *United States v. Cook*, 880 F.2d 1158,

1161 (10th Cir. 1989) (internal quotation marks omitted). Defendant's underlying conviction for being a felon in possession of a firearm—a stolen firearm, no less—weighs heavily against him. Gun violence is a serious problem in communities like Saginaw, Michigan, where Defendant was arrested. More concerning is Defendant's demonstrated pattern of probation and parole violations, including his conviction for removing his electronic tether. Moreover, while the physical safety of the community is one concern, "drug trafficking is a serious offense that, in itself, poses a danger to the community." *United States v. Stone*, 608 F.3d 939, 947 (6th Cir. 2010). Defendant has not addressed his criminal history nor provided a convincing reentry plan. For these reasons, Defendant has failed to show that he would not be a danger to others or the community if released.

## II.

Accordingly, it is **ORDERED** that Defendant Isaac Isiah Barnes' Motion for Modification of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A), ECF No. 27, is **DENIED WITH PREJUDICE.**

Dated: September 28, 2020         s/Thomas L. Ludington
                                  THOMAS L. LUDINGTON
                                  United States District Judge

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means and to **Isaac Isiah Barnes** #57131-039, OXFORD FEDERAL CORRECTIONAL INSTITUTION, Inmate Mail/Parcels, P.O. BOX 1000, OXFORD, WI 53952 by first class U.S. mail on September 28, 2020.

         s/Kelly Winslow
         KELLY WINSLOW, Case Manager